## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Sean Michael Wolodzko, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been since 2016. During that time, I have investigated numerous violations of federal law, including cases involving threats to life. I am a member of the Joint Terrorism Task Force, and also served in that capacity when I was assigned to the FBI's Chicago Field Office. I have been certified by the FBI's Computer Analysis Response Team (CART) to perform extractions of digital devices.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a blue Motorola smartphone, hereinafter the "Device," assigned phone number (231) 327-7912. The Device is currently located at the FBI Grand Rapids Resident Agency.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

6.      On February 3, 2026, a grand jury in this District returned an indictment charging defendant Christopher Ray Plyer with one count of threatening federal officials, in violation of

18 U.S.C. § 115(a)(1)(B), and two counts of interstate threatening communications, in violation of 18 U.S.C. § 875(c). (Case No. 1:26-cr-12-HYJ, R. 1: Indictment.)

7.    On January 23, 2026, Google LLC notified the FBI that a YouTube user had posted comments since November 13, 2025, that violated their policies, and constituted a potential threat to life. Among other comments, the poster wrote, ""LET THEM COME I'M READY TO KILL ICE NAZIS AND MAKE THEM PAY WITH THEIR LIVES THE WAR IS ON," and, "We're gearing up for war my friend and I bought whistles and we will be buying guns and I am making chloromine [sic] gas canisters to throw at them and getting deadly chemicals to spray them with THIS IS WAR AND THEY WILL PAY WITH THEIR LIVES ELIMINATE THEM ALL KILL THE ICE NAZIS NAZI ELIMINATION NOW."

8.    I reviewed the subscriber information for the threat poster, and learned the listed subscriber was Christpher Ray Plyler of Grand Haven, Michigan. I also learned that the contact phone number for the account was (231) 327-7912.

9.    On January 29, 2026, I interviewed Mr. Plyler at his place of employment in Grand Haven. He admitted that he had sent the YouTube posts described above. When I asked him if he had the chemicals he was discussing in the posts, he said "I don't have the chemicals yet," or words to that effect. He added that he "probably" wouldn't use them against ICE, and "probably" wouldn't make the chemicals.

10.    During the interview, Plyer admitted that (231) 327-7912 was his phone number, and that it was the number assigned to his blue Motorola smart phone (the Device). Plyler gave me consent to scroll through his phone in his presence. I navigated to his Google search history and found searches for "what is the difference between chlorine gas and chloramine gas," "what

2

is christy gnomes home address," "list of proud boys in Michigan" and "what would happen if

you mix ammonia and bleach." Plyer admitted he had entered those search terms. "Christy

Gnomes" appears to be a phonetic spelling of Kristy Noem, the Secretary of Homeland Security.



11.     While viewing Plyler's phone, I also observed that he had been searching for and viewing YouTube videos about how to make wooden guns, slingshots, and other weapons that did not require bullets. I am aware that Plyler is prohibited from possessing firearms because of a felony conviction, and I therefore have reason to believe he was looking for weapons he could acquire without a background check.

12.     Google information showed that Plyler's comments were posted to videos about the current unrest in various cities where Immigration and Customs Enforcement (ICE) agents have been operating. I am aware that when users post comments to a YouTube video, they can communicate and interact with other posters.

13.     In my training and experience, people who are planning violence or mass casualty attacks often visit the intended target location beforehand to assess the site and determine escape routes. Smartphones like the Device can capture the phone's location history, and the Device's presence at the location of a planned ICE operation or protest, or the location of an ICE or DHS official, would suggest intent to carry out an attack. In addition, photographs of such sites would be evidence of planning for an attack.

14.     Where individuals planning an attack are working together, they often communicate using voice, video, or text applications, including encrypted messaging services. Those messages can be retrieved from the devices that sent and received the communications, even if they were encrypted in transit. Such messages and contact information would be likely to contain details that could thwart an attack by yet unknown threat actors.

15.     Based on Plyler's search history, there is reason to believe he may be shopping for chemicals, chemical weapon components, and equipment used to make non-traditional weapons. Where purchases were made using the Device or using financial services linked to the

4

same accounts as the Device, I would expect to find searches, orders, receipts and other evidence of such activity on the Device.

16.    I arrested Plyler this morning (February 5, 2026) on a warrant issued by this Court in conjunction with his indictment. The Device was seized incident to arrest, and is currently in the lawful possession of the FBI. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

17.    The Device is currently in storage at the FBI Grand Rapids Resident Agency. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

**TECHNICAL TERMS**

18.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing

5

names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19.  In my training and experience, smartphones like the Device have capabilities that allow them to serve as a telephone, a digital camera, GPS device, and an internet browser. They can also be used to send and receive voice, video, and text messages both through telephone

carriers and social media applications.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

21. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

23. *Biometric Unlocking.*  The warrant I am applying for would permit FBI agents or other law enforcement authorities to compel Christopher Ray Plyer to unlock a device subject to seizure pursuant to this warrant using the device's biometric features. I seek this authority based on the following:

   a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many

electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features including fingerprint scanners, facial recognition features, and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize. I further know from my training and experience that biometrics can also be used to open individual mobile applications or computer programs on the phones, computers, or other electronic devices that are being searched. Many applications and computer programs require a password or biometric data to open them even after the phone or computer is unlocked. There are multiple applications such as social media or messaging applications which may utilize biometrics. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device, applications, or programs through his or her fingerprints. For example, I know from my training and experience, as well as from information found in publicly available materials, that most recent models of devices offer their users the ability to unlock the device via the use of fingerprint or thumbprint (together, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID. I also know that these models offer some of their users the ability to unlock the device via the use of facial recognition (through infrared and visible light scans) in lieu of a numeric or alphanumeric passcode or password.

b. If a user enables a biometric lock using fingerprints on a given device, he or she can register up to five fingerprints that can be used to unlock that device. The user

can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's sensor. If a user enables a facial biometric lock on a given device, he or she can unlock the device by raising the phone to his or her face or tapping the screen. In my training and experience, users of devices that offer these features often enable them because they are considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents.

24. Accordingly, I request that the Court authorize law enforcement personnel executing the warrant to press or swipe the fingers (including thumbs) of Christopher Ray Plyler to the fingerprint sensors of any applicable electronic device, if necessary, and/or with reasonable force hold his face in place while holding the device in front of his face, if necessary, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

25. Law enforcement personnel executing the warrant will select which fingers to press to the device. The proposed warrant does not authorize law enforcement personnel to compel Christopher Ray Plyler to state or otherwise provide the password or passcode or any other means that may be used to unlock or access any device. Moreover, the proposed warrant does not authorize law enforcement personnel executing the warrant to compel Christopher Ray Plyler to identify the specific biometric characteristics (including unique fingerprint(s) or other physical features) that may be used to unlock or access any devices.

## **CONCLUSION**

26.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.